UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHANGSHA SUDA ELECTRONIC COMMERCE LLC,<br><br>           Plaintiff,<br>      v.<br><br>GUANGZHOU YIMEI COSMETICS CO LTD, ET AL,<br><br>           Defendants. | CASE NO. 2:25-cv-01978-LK<br><br>ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER |

    This matter comes before the Court on Plaintiff Changsha Suda Electronic Commerce LLC's Motion for Entry of Temporary Restraining Order. Dkt. No. 4. Plaintiff seeks an order requiring Defendants Guangzhou Yimei Cosmetics Co., Ltd., Guangzhou Jiemi Biotechnology Co., Ltd., Yaru Liu, and Xingtao Liu to withdraw their patent infringement complaints to Amazon and Temu and refrain from submitting further complaints about the same patent pending adjudication on the merits. *Id.* at 23. For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

Plaintiff sells a product called "DolaHair hair wax sticks" (the "Accused Products") on Amazon and Temu through its online storefronts called "DolaHair." Dkt. No. 1 at 4, 7. On October 1, 2025, "Amazon notified Plaintiff that a design-patent infringement complaint had been filed, identifying the rights holder as 'liuyaru,' purporting to be 'Guangzhou Yimei Cosmetics Co.[]'" *Id.* at 11; Dkt. No. 4-3 at 4. That complaint alleged that Plaintiff's DolaHair hair wax stick infringed U.S. Patent Number D1,075,508 S (the "'508 Patent"). Dkt. No. 1 at 7, 11; Dkt. No. 4-3 at 4. As a result of the complaint, Amazon removed certain Accused Products from Plaintiff's storefront on October 4, 2025, and they have "remained suppressed on Amazon[.]" Dkt. No. 1 at 11; *see also* Dkt. Nos. 16–17.

Plaintiff also alleges that on September 19, 2025 and October 6, 2025, Defendants[1] submitted "design patent infringement complaints to the e-commerce platform TEMU, alleging that Plaintiff's DolaHair Hair Wax Stick products infringed the '508 Patent" and "identif[ying] Guangzhou Yimei Cosmetics Co., Ltd. as the rights owner." *Id.* at 11–12; Dkt. No. 4-4 at 2. This purportedly "le[d] to the delisting of Plaintiff's corresponding TEMU products." Dkt. No. 1 at 3; *see also* Dkt. No. 4-4 at 2.

Plaintiff says that Defendants' '508 patent is invalidated by the "public-use and on-sale bars of 35 U.S.C. § 102" because Plaintiff's DolaHair hair wax stick "had been publicly sold and

---

[1] Plaintiff alleges that Defendant Guangzhou Yimei Cosmetics is a Chinese corporation with its principal place of business in China. Dkt. No. 1 at 4. It is the listed assignee and owner of the '508 Patent. *Id.* Defendant Guangzhou Jiemi Biotechnology Co.—another Chinese corporation with its principal place of business in China—owns the United States trademark registration for ROZINO, which covers hair wax stick products sold on Amazon. *Id.* Defendant Liu Xingtao—an individual residing in China who is the "legal representative, majority shareholder, and executive director of Guangzhou Jiemi Biotechnology—operates an Amazon store named "xiaoks" that sells ROZINO-branded hair wax stick products that directly compete with the Accused Products. *Id.* Defendant Liu Yaru is an individual residing in China who submitted the Amazon complaint on behalf of Guangzhou Yimei Cosmetics. *Id.* at 4–5. Plaintiff avers that all Defendants "are closely related entities with overlapping ownership, management, and business interests, and have acted in coordination with one another in all relevant respects," including "in preparing, authorizing, and submitting infringement complaints to Amazon and TEMU against Plaintiff concerning the A[ccused] Products." *Id.* at 5.

disclosed in the United States well before the October 27, 2023 filing date of the '508 Patent." Dkt. No. 1 at 3. In any event, Plaintiff says that the Accused Products do not infringe. *Id.* at 11.

Facing "significant commercial harm, including the loss of sales, goodwill, and market access," Plaintiff filed suit in this Court on October 13, 2025, asserting claims for (1) declaratory judgment of patent invalidity and unenforceability, (2) declaratory judgment of noninfringement, (3) tortious interference with contractual relations, (4) violation of the Washington Patent Troll Prevention Act, Section 19.350, *et seq.*, of the Revised Code of Washington, (5) violation of the Washington Consumer Protection Act, Section 19.86, *et seq.*, of the Revised Code of Washington, (6) "Attempted Monopolization (15 U.S.C. § 2) – Walker Process Sherman Act Violation," and (7) "Sham Enforcement/Anticompetitive Conduct." *Id.* at 3, 12–20 (citations modified). The complaint requests, among other relief, an order declaring that the '508 Patent is invalid and unenforceable, declaring that the "DolaHair Hair Wax Stick does not infringe any valid and enforceable claim of the '508 Patent," finding that Defendants violated the statutes listed above, ordering defendants to withdraw their complaints submitted to Amazon and Temu, and awarding injunctive and monetary relief. *Id.* at 21–22.

On the same day, Plaintiff filed this motion for a Temporary Restraining Order ("TRO"), seeking injunctive relief based on their declaratory judgment claims. Dkt. No. 4. The Court found that "Plaintiff ha[d] not shown that it [was] entitled to emergency relief without giving Defendants an opportunity to respond," Dkt. No. 9, and thus ordered Defendants to file a response by October 20, 2025, Dkt. No. 14. Plaintiff made significant efforts to provide notice to Defendants of the complaint, motion for TRO, and the Court's orders. Dkt. No. 4 at 21–22, 25; Dkt. Nos. 11, 13, 15. Defendants have neither appeared nor responded.

## II. DISCUSSION

**A.  Jurisdiction and Venue**

1. <u>Subject Matter Jurisdiction</u>

Because Plaintiff brings this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

2. <u>Personal Jurisdiction</u>

The issue of personal jurisdiction for claims "intimately related to patent law" is governed by Federal Circuit law. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). The Federal Circuit uses a two-step inquiry to analyze personal jurisdiction: (1) whether the applicable long-arm statute extends to a defendant; and (2) whether the assertion of personal jurisdiction violates due process. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348–50 (Fed. Cir. 2002).

Rule 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009). "Rule 4(k)(2), therefore, serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Id.* at 1296. A three-factor test is employed to determine whether specific personal jurisdiction comports with due process: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,

848 F.3d 1346, 1353 (Fed. Cir. 2017). Relevant here, "if Rule 4(k)(2) supplies the due process analysis, then the forum is the United States," "as opposed to the state in which the district court sits." *Synthes (U.S.A.)*, 563 F.3d at 1291, 1295. Plaintiff bears a prima facie burden of demonstrating jurisdiction. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

Plaintiff alleges that Defendants "purposefully directed their conduct at Washington by submitting infringement complaints through Amazon, whose principal place of business is in Seattle, Washington, and by pursuing platform enforcement directed to U.S. commerce that is accessible within this District." Dkt. No. 1 at 6. Plaintiff argues in the alternative that this Court has personal jurisdiction under Rule 4(k)(2) because "Defendants are not residents of the United States, the claims arise out of their contacts with the United States as a whole, and exercising jurisdiction is consistent with the Constitution and laws of the United States." *Id.*

Based on the current record, the Court cannot find that it has personal jurisdiction over Defendants based on their contacts with the forum state. *See Jiujiang Xiangmojin Trading Co. Ltd., v. Interlink Prods. Int'l Inc.*, No. 2:24-CV-02034-LK, 2025 WL 2966307, at *4 (W.D. Wash. Oct. 21, 2025) (infringement complaint through Amazon is not a meaningful contact with this District). However, the Court finds that it does have personal jurisdiction over Defendants with respect to Plaintiffs' declaratory judgment claims[2] under Rule 4(k)(2). As the Federal Circuit has observed, if a "defendant patentee purposefully directs activities at the forum which relate in some material way to the enforcement or the defense of the patent, those activities may suffice to support specific jurisdiction." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008). This includes activities relating to the enforcement of patent rights, such as "initiating

---

[2] Jurisdiction under Rule 4(k)(2) requires that the subject claims "arise[] under federal law. Fed. R. Civ. P. 4(k)(2).

ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER - 5

judicial or extra-judicial patent enforcement within the forum[.]" *Id.* at 1334. However, the defendant must do more than "simply inform[] the accused infringer of the patentee's allegations of infringement." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008). Because Guangzhou Yimei Cosmetics obtained a United States patent and Defendants sought to enforce the ensuing patent rights in this country by submitting infringement complaints to Amazon and Temu, Dkt. No. 4-3 at 2–5; Dkt. No. 4-4,[3] and by asking the platforms to take actions to protect those patent rights, *see* Dkt. No. 4-3 at 2–5; Dkt. No. 4-4, the Court finds that Defendants purposefully directed activities to the United States. *See Campbell Pet Co.*, 542 F.3d at 886–87 (finding jurisdiction over a patentee whose "extra-judicial patent enforcement"—namely, enlisting a third party to remove defendant's products from a trade show that was being held in the forum state—went beyond merely informing the defendant of its alleged infringement); *Shenzhen Wanfan Tech. Co. v. Orbital Structures Pty Ltd.*, No. 23-CV-02330, 2024 WL 325339, at *6 (N.D. Ill. Jan. 29, 2024) (foreign defendant had sufficient contacts with the United States under Rule 4(k)(2) through registering its patent here and making an infringement complaint through Amazon, resulting in the takedown of plaintiff's product listings).

Further, the Court concludes that exercising jurisdiction over Defendants would be reasonable and fair. Guangzhou Yimei Cosmetics registered its patent in this country and Defendants are enforcing that patent to halt Plaintiff's sales of the Accused Products in this country. Defendants are therefore fairly subject to litigation in a United States district court in connection with those efforts. *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1311 (Fed. Cir. 2019) ("[Defendant]'s enforcement of a U.S. patent, as well as the

---

[3] The Court notes that portions of the record include machine translations. *See, e.g.*, Dkt. No. 4-3 at 4–5. If the parties intend to rely on translations of documents originally written in a foreign language in a future motion, the translation must conform to the requirements of the Rules of Evidence. *See, e.g.*, Fed. R. Evid. 604 ("An interpreter must be qualified and must give an oath or affirmation to make a true translation.").

interest of [plaintiff] in determining whether it could be potentially liable for infringement, weigh in favor of finding jurisdiction reasonable"); *Shenzhen Wanfan Tech. Co.*, 2024 WL 325339, at *6 (concluding that it would be fair to exercise jurisdiction over foreign defendant who registered its trademark in the United States and was enforcing that trademark to interfere with plaintiff's sales in the United States); *see also Synthes*, 563 F.3d at 1299 ("[T]he United States has a 'substantial interest' in enforcing the federal patent laws.").

3. <u>Venue</u>

"Venue in a declaratory judgment action for patent noninfringement and invalidity is governed by the general venue statute, 28 U.S.C. § 1391(b) and (c), and not the special patent infringement venue statute, 28 U.S.C. § 1400(b)." *U.S. Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir. 1982). As relevant here, "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3). Accordingly, venue is appropriate here.

**B.      Legal Standard**

Federal Rule of Civil Procedure 65 empowers the court to issue a TRO. Fed. R. Civ. P. 65(b). Rule 65 permits the issuance of preliminary relief "on notice," or in some cases without "written or oral notice to the adverse party or its attorney." Fed. R. Civ. P. 65(a), (b)(1); *see also H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) ("There is a reason Rule 65 allows emergency injunctive relief before service of process": requiring formal service "would have the unfortunate effect of immunizing most foreign defendants from needed emergency injunctive relief" because "formal service of process under the Hague Convention or other provisions of law can take months"); *Glasser v. Blixseth*, No. C14-1576 RAJ, 2014 WL 12514894, at *1 (W.D. Wash. Nov. 14, 2014) (collecting cases).[4]

---

[4] Although Defendants have not appeared or answered, Plaintiff made concerted attempts to notify Defendants of the

Like a preliminary injunction, a TRO is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (the standards applicable to TROs and preliminary

---

complaint, motion for TRO, and the Court's orders:

- On October 10, 2024, Plaintiff's counsel sent "a demand and notice email to Guangzhou Yimei Cosmetics . . . and Guangzhou Jiemi Biotechnology Co. . . . , attaching draft versions of the Complaint and Motion for [TRO]." *See* Dkt. No. 11-1 at 1 (stating that email was sent on October 4, 2025); *see also* Dkt. No. 4-14 at 2 (email reflecting sent date of October 10, 2025).

- On October 15, 2025, Plaintiff's counsel sent the Complaint and Motion for TRO "to all email addresses that, after reasonable investigation, appear to be associated with Liu Xingtao or entities under his control, including: YA17317959501@outlook.com[,] 844517449@qq.com[,] 651888068@qq.com[,] 1034357014@qq.com[,] 15920598618@163.com[,] ipattorney3@gmail.com[,] [and] aabb6543210@outlook.com[.]" Dkt. No. 11-1 at 2; *see also* Dkt. No. 11-2 at 2. "These addresses include (a) the contact emails used by Defendants in Amazon and TEMU infringement complaints, (b) all corporate-registration contact emails listed for [Guangzhou] Jiemi [Biotechnology Co.] in China, and (c) the contact emails listed for [Guangzhou] Jiemi [Biotechnology Co.]'s U.S. trademark registration of the mark ROZINO." Dkt. No. 11-1 at 2–3. On the same day, Plaintiff's counsel sent "the same notice through the Amazon Buyer – Seller Messaging System to the storefront 'xiaoks,' which is registered to Liu Xingtao." *Id.* at 3; *see also* Dkt. No. 11-3 at 2-3.

- On October 16, 2025, Plaintiff's counsel sent "the text of the Court's October 14, 2025 Minute Order (Dkt. 9) to email addresses reasonably believed to be associated with all Defendants"—the same email addresses to which prior communications were sent. Dkt. No. 13-1 at 1–2; *see also* Dkt. No. 13-2 at 2 (date stamp of October 17, 2025 reflects the date in Shenzhen, China (*see* Dkt. No. 31-1 at 1)). On the same day, Plaintiff's counsel "transmitted the same notice through Amazon'[]s Buyer–Seller Messaging System to the storefront 'xiaoks[.]'" Dkt. No. 13-1 at 2; *see also* Dkt. No. 13-3 at 2–3.

- On October 17, 2025, Plaintiff's counsel "received a phone call from a person who identified herself as being from Guangzhou Jiemi Biotechnology Co., Ltd.," and stated that "she had seen Plaintiff's notice of the Court's Dkt. 9 order through the message sent via Amazon's Seller Messaging System to the storefront 'xiaoks.'" Dkt. No. 15-1 at 3. According to Plaintiff's counsel, "[t]he caller acknowledged that they had submitted the original Amazon complaint against Plaintiff, asked about the status of the case and the deadline for Defendants to respond to the TRO motion, and said she would relay this information to her boss." *Id.*

- On October 18, 2025, before the Defendants' October 20, 2025 deadline to respond to the TRO, Plaintiff's counsel sent "the text of the Court's October 17, 2025 Minute Order (Dkt. 14) to email addresses reasonably believed to be associated with all Defendants"—the same email addresses to which prior communications were sent. *Id.* at 1–2; *see also* Dkt. No. 15-2 at 2. On the same day, Plaintiff's counsel "transmitted the same notice through Amazon's buyer seller messaging system to the storefront 'xiaoks[.]'" Dkt. No. 15-1 at 2; *see also* Dkt. No. 15-3 at 2–3.

- On October 24, 2025, before Defendants' October 25, 2025 deadline to respond to Plaintiff's supplemental briefing on irreparable harm, Plaintiff's counsel "served a copy of the Court's Order Requesting Supplemental Briefing on Irreparable Harm (Dkt. 16) and Plaintiff's Supplemental Brief on Irreparable Harm by email" to the same email addresses to which prior communications were sent. Dkt. No. 18 at 1; *see also* Dkt. 18-1 at 1. "[T]he same notice [was] transmitted through Amazon's Xiaoks messaging system associated with Defendants' storefront." Dkt. No. 18 at 2; *see also* Dkt. No. 18-2 at 1–3.

Because Defendants "act in concert and are affiliated with one another," Plaintiff avers that its correspondence with Guangzhou Yimei Cosmetics and Jiemi Biotechnology Co. serves "to notify all related parties" Dkt. No. 11-1 at 1. The Court finds that Plaintiff's efforts to provide Defendants with notice of this case, the TRO motion, and Court orders were reasonably calculated to provide such notice, and appear to have succeeded.

ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER - 8

injunctions are "substantially identical"). The Court will not "mechanically" grant an injunction for every violation of law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Instead, plaintiffs seeking a TRO must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. The mere "possibility" of irreparable harm is insufficient; instead, the moving party must "demonstrate that irreparable injury is likely in the absence of an injunction." *Id.* at 22.

The Ninth Circuit employs a "sliding scale" approach, under which the four elements are balanced "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a [TRO], so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (citation modified). The moving party bears the burden of persuasion and must make a clear showing that it is entitled to such relief. *Winter*, 555 U.S. at 22.

**C.      Plaintiff is Entitled to a TRO**

       1.   <u>Likelihood of Success on the Merits</u>

Plaintiff contends that it is likely to succeed on the merits of its claim that the '508 Patent is invalid under 35 U.S.C. § 102(a)(1) and 35 U.S.C. § 103 because "identical or substantially similar DolaHair Hair Wax Stick designs were publicly sold" in the United States "well before the October 27, 2023 filing date of the '508 Patent," "some identical designs appeared more than one year earlier," and patents for the same design were issued to other inventors in the United Kingdom and China prior to the filing date of the '508 Patent. Dkt. No. 4 at 6, 10. Plaintiff also argues that its claim for declaratory judgment of noninfringement is likely to succeed because "[i]f the claimed

design of the '508 Patent is construed to encompass Plaintiff's Asserted Products, then the claimed design is invalid under the public-use and on-sale bars of 35 U.S.C. § 102(a)(1)," and conversely, "[i]f . . . the claimed design of the '508 Patent is not construed to encompass Plaintiff's Asserted Products, then Plaintiff does not infringe as a matter of law." *Id.* at 11–12.

Design patents are presumed to be valid. 35 U.S.C. § 282(a). That presumption of validity exists "during preliminary injunction proceedings as at other stages of litigation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009).[5] A party seeking to invalidate a patent bears the burden of proving invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Under 35 U.S.C. § 102, an inventor is not entitled to a patent if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention," subject to certain exceptions not applicable here. 35 U.S.C. § 102(a)(1); *see also Cixishihualongdianziyouxiangongsi v. Seven Sparta Corp.*, No. 2:25-cv-01313-JHC, 2025 WL 2052632, at *2 (W.D. Wash. July 22, 2025). "Section 102 embodies the concept of novelty—if a device or process has been previously invented (and disclosed to the public), then it is not new, and therefore the claimed invention is 'anticipated' by the prior invention." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008).

Under 35 U.S.C. § 103, an inventor cannot obtain a patent for a claimed invention "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." In determining

---

[5] The Court is guided by the law of the United States Court of Appeals for the Federal Circuit when a preliminary injunction rests on substantive patent law issues. *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988).

whether a claimed invention is obvious in light of prior art, courts should consider (1) the scope and content of analogous prior art within the knowledge of an ordinary designer in the field of the design; (2) the differences in visual appearance between the prior art and the design claim at issue from the perspective of an ordinary designer in the field; (3) the level of ordinary skill in the pertinent art, and (4) "where a primary reference alone does not render the claimed design obvious . . . some record-supported reason (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall appearance as the claimed design." *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1298–1299 (Fed. Cir. 2024). At the fourth step, any secondary indicia of nonobviousness—*e.g.*, commercial success, industry praise, or copying of the claimed design—must also be considered. *Id.* at 1300.

Plaintiff contends that the records it has filed show "that identical or substantially similar DolaHair Hair Wax Stick designs were publicly sold and reviewed in the United States well before the October 27, 2023 filing date of the '508 Patent" and that "some identical designs appeared more than one year earlier." Dkt. No. 4 at 6. Plaintiff cites four examples:

- The Accused Product under ASIN B0BRC8T39V was first listed on Amazon on December 29, 2022. *Id.* at 6; Dkt. No. 4-5 (Amazon inventory page reflecting ASIN B0BRC8T39V as "Active" starting December 29, 2022).

- Plaintiff's earlier product under ASIN B0B1DB76T4 received customer photo reviews on July 20, 2022 and August 24, 2022. Dkt. No. 4 at 6; Dkt. No. 4-6 at 7 (Amazon customer review dated July 20, 2022).

- Another listing of the same design under ASIN B0B7QM93ZV received a customer photo review on September 6, 2022. Dkt. No. 4 at 6; Dkt. No. 4-7 at 7 (Amazon customer review dated September 6, 2022).

- Other identical wax-stick designs, including the TIGI "Bed Head" Wax Stick (ASIN B000141L58) and the IKT Wax Stick (ASIN B09TVZNDZ1), were publicly available and reviewed on Amazon between 2020 and 2022. Dkt. No. 4 at 7; Dkt. No. 4-8 at 19 (Amazon customer review dated December 4, 2020).

ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER - 11

Plaintiff also provided a sworn declaration from its executive director attesting to the facts that Plaintiff first publicly listed the Accused Product on Amazon on December 29, 2022, and that Plaintiff had an identical design that received a customer review as early as July 20, 2022. Dkt. No. 4-17 at 1–2. Based on this evidence, Plaintiff contends that the '508 Patent is "invalid under the public-use and on-sale bars of § 102(a)(1)." Dkt. No. 4 at 10.

Plaintiff additionally puts forth evidence that its manufacturer filed Chinese Design Patent CN306792497S (Application No. 202130265313.0, filed May 6, 2021; published Aug. 31, 2021) and UK Registered Design No. 6278014 (filed Apr. 25, 2023; granted May 3, 2023), "both disclosing the same overall wax-stick design." Dkt. No. 4 at 10; *see also* Dkt. Nos. 4-9, 4-10. Plaintiff argues that these references, alone or in combination, raise a substantial question of invalidity under 35 U.S.C. § 103. Dkt. No. 4 at 10.

Plaintiff's evidence shows that the Accused Products were publicly available well before Defendants' claimed invention's filing date. Thus, as Plaintiff contends, if the claims of the '508 Patent read on the Accused Products and the accused design and claimed design are "substantially the same" to an ordinary observer, the claimed design is invalid, and if these tests are not met, the Accused Products do not infringe. Dkt. No. 4 at 11–13. In light of these undisputed facts, the Court finds that Plaintiff has shown that it is likely to succeed on the merits of either its invalidity or its noninfringement claim.

2. Likelihood of Irreparable Harm in the Absence of Preliminary Relief

To obtain a TRO, the plaintiff must show more than the possibility of irreparable injury; it must demonstrate that irreparable injury is likely and imminent in the absence of preliminary relief. *Winter*, 555 U.S. at 22. There must also be a "sufficient causal connection" between the alleged irreparable harm and the activity to be enjoined. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976,

981–82 (9th Cir. 2011). Showing that "the requested injunction would forestall" the irreparable harm qualifies as such a connection. *Id.* at 981.

Here, Plaintiff alleges that it will suffer irreparable harm absent a TRO because "both Amazon and TEMU . . . have delisted Plaintiff's best-selling DolaHair Hair Wax Stick products"—"effectively granting Defendants a de facto injunction without judicial oversight." Dkt. No. 4 at 14. Plaintiff further states that Defendants' actions have caused "loss of access to the U.S. marketplace, disruption of advertising efforts, damaged reputation, and lost customer relationships[.]" *Id.* In support, Plaintiff filed a declaration from Bin Huang, its executive director, stating that 70 percent of Plaintiff's total revenue comes from the U.S. Amazon marketplace, and the delisted Accused Product alone represents about 27% of Plaintiff's Amazon store revenue. Dkt. No. 4-17 at 2. He notes that before it was delisted, the Accused Product "was among the top performers in its category—ranked No. 2 overall and occasionally reaching No. 1[.]" *Id.* Mr. Huang also states that 82,776 units of the delisted Accused Product are held in Amazon warehouses and are "scheduled for automatic disposal on December 4, 2025," after which time the inventory "will be unrecoverable, and the associated manufacturing, packing, and logistics costs will become permanent losses." *Id.* As for Temu, Mr. Huang states that platform's sales "account[] for approximately 20% of Plaintiff's total U.S. revenue" and that the removed listings "represent about 40% of its TEMU store income." *Id.* at 3. The delisted Temu products "had achieved category ranking No. 5, with an average rating of 4.7 stars and over 35,520 customer reviews." *Id.*[6]

---

[6] On October 22, 2025, the Court ordered Plaintiff to provide supplemental briefing on irreparable harm, noting that certain of "Plaintiff's products appear to still be available on the relevant platforms." Dkt. No. 16 at 1. Plaintiff timely filed supplemental briefing and another declaration from Mr. Huang, the latter of which indicates that the "delisted Amazon ASIN—Plaintiff's flagship listing—accounted for approximately 65% of total Amazon revenue for this product line" and that the delisted Temu product IDs "account for all sales of the same product line." Dkt. No. 19-1 at 2. Plaintiff's submissions satisfy the Court's concerns about active listings on the relevant platforms.

ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER - 13

Mr. Huang states that the combined delistings "have caused severe operational disruption," including a sharp decline in "[s]ales velocity, keyword ranking, and algorithmic placement on both platforms[.]" *Id.* He notes that "[p]roduct rankings on these platforms depend heavily on consistent sales history and customer engagement, which degrade rapidly once listings are suspended. Years of accumulated goodwill, verified reviews, and algorithmic credibility have been eroded[.]" *Id.* This has caused Plaintiff's revenue to drop, "forcing the company to reduce production orders and consider workforce reductions." *Id.* Mr. Huang says that "[w]ithout court intervention, the company will lose nearly half of its U.S. sales volume, suffer irreversible loss of consumer trust, and face the destruction of substantial inventory assets." *Id.* at 4. As a result, Plaintiff alleges that "the inability to continue selling the[] [Accused Products] threatens the viability of [Plaintiff's] brand and operations and would likely necessitate workforce reductions." Dkt. No. 4 at 15.

In the context of a TRO, "monetary injury is not normally considered irreparable[.]" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (citation modified); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm."). However, "[r]eputational harm and loss of goodwill can be irreparable harm . . . [as] can threatened loss of prospective customers." *Beyond Blond Prods., LLC, v. Heldman*, 479 F. Supp. 3d 874, 888 (C.D. Cal. 2020). The reputational harm and loss of goodwill described by Mr. Huang are sufficient to demonstrate irreparable harm. *See, e.g.*, *Beyond Blond Prods.*, 479 F. Supp. 3d at 887 (noting that "loss of goodwill can be irreparable harm," and "[s]o can threatened loss of prospective customers"); *Verizon Serv. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007) (irreparable harm can include "lost opportunities to sell other services to the lost customers"); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price

erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.").

Plaintiff has also shown a sufficiently strong causal nexus between the Defendants' conduct and the alleged harm: Amazon and Temu delisted Plaintiff's products as a result of Defendants' complaints. *See* Dkt. Nos. 4-3, 4-4. Accordingly, Plaintiff has shown a likelihood of irreparable harm absent a TRO.

### 3. Balance of Equities

Plaintiff argues the balance of equities tips in favor of issuing a TRO because the relief sought is "narrowly tailored and seeks only to restore the status quo ante—that is, to reverse Defendants' unilateral and extra-judicial actions in delisting Plaintiff's product listings from Amazon and TEMU." Dkt. No. 4 at 18. It contends that, without court intervention, it will continue to experience "loss of goodwill, customer relationships, marketplace rankings, and business reputation," as well as "destruction of more than $570,000 worth of Amazon inventory[.]" *Id.* Plaintiff adds that "if Defendants ultimately prevail on the merits—by proving that the '508 Patent is valid and infringed—they remain fully entitled to seek monetary damages at that time," while "if Plaintiff prevails, any attempt to recover monetary damages would be futile, as Defendants are all foreign entities and individuals based in Guangzhou, China, with no known assets, offices, or operations in the United States." *Id.*

In light of Plaintiff's evidence of irreparable harm and the facts provided above, the Court finds that "the balance of equities weighs in favor of ordering Defendants to retract their patent infringement notice[s] so Plaintiff's products may be relisted[.]" *Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866, 880 (C.D. Cal. 2021). In addition, Defendants can be "compensated by damages" if they later prove infringement and overcome Plaintiff's invalidity contentions. *Id.* Accordingly, the Court finds that this factor weighs in Plaintiff's favor.

    4. Public Interest

Plaintiff says that granting a TRO would serve the public interest because there is no "legitimate public interest that would be harmed by [Defendants] temporarily withdrawing their infringement complaints and restoring Plaintiff's ability to sell legitimate, non-infringing products on Amazon and TEMU," and "the public benefits when businesses are permitted to compete fairly in the marketplace and when invalid or baseless intellectual property assertions are not used as tools to suppress lawful competition without judicial scrutiny." Dkt. No. 4 at 20.

Again, the Court agrees with Plaintiff that the public interest factor weighs in its favor. Specifically, given the ubiquity of Amazon and Temu shopping to the general public, "the public has an interest in a full and fair online marketplace." *Medcursor*, 543 F. Supp. 3d at 880. Where, as here, "the moving party has demonstrated a likelihood of success on patent invalidity" or noninfringement, and "likely irreparable harm flowing from the inability to reach its customers on Amazon" and Temu, "the public interest favors preventing a competitor from using a seemingly innocuous intellectual property rights-protection notice to effectively shut down a competitor's business." *Id.*; *see also Beyond Blond Prods.*, 479 F. Supp. 3d at 888.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Entry of Temporary Restraining Order, Dkt. No. 4, and ORDERS as follows:

1. Defendants Guangzhou Yimei Cosmetics Co., Ltd., Guangzhou Jiemi Biotechnology Co., Ltd., Liu Yaru, and Liu Xingtao d/b/a xiaoks, and all persons acting in concert or participation with them, are temporarily ENJOINED from submitting any further complaints to Amazon, Temu, or any other third-party platform alleging that DolaHair Hair Wax Stick products (as described above and pictured at docket entry 4-6 at 2) infringe the '508 Patent.

    2. Defendants are ORDERED to retract their patent infringement complaints based on the '508 Patent against Plaintiff's DolaHair Hair Wax Stick products on the Amazon.com platform, including Complaint ID 18554348421, and on the Temu platform, including Product IDs 744758791, 114736196, 199877642 and 306350970, by no later than 48 hours from the date of this Order.

    4. Within 24 hours of this Order, Plaintiff shall serve a copy of this Order and the related filings on Defendants at the following email addresses and through any additional contact information reasonably available: YA17317959501@outlook.com; 844517449@qq.com; 651888068@qq.com; 1034357014@qq.com; 15920598618@163.com; ipattorney3@gmail.com; aabb6543210@outlook.com; and the Amazon Buyer – Seller Messaging System to the storefront "xiaoks." Plaintiff shall file a certification attesting to compliance with this directive by October 31, 2025.

    3. No security bond is required under Federal Rule of Civil Procedure 65(c) because there is no realistic likelihood of harm to the Defendants from enjoining their conduct under these circumstances. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

    4. Pursuant to Federal Rule of Civil Procedure 65(d)(2), this Order is binding on those persons who receive actual notice of this Order if those persons are officers, agents, servants, employees, or attorneys of Defendants, or if they are acting in active concert or participation with Defendants.

    5. Unless extended by the Court for good cause, this TRO expires 14 days from entry.

    6. If Plaintiff intends to seek a preliminary injunction before the expiration of the TRO, it must formally serve Defendants with the complaint, motion for temporary restraining order, and this Order and file its motion for a preliminary injunction by November 3, 2025. Associated briefing deadlines are as follows:

(a) November 3, 2025: Deadline for Plaintiff to file a motion for preliminary injunction of no more than 8,400 words;

(b) November 7, 2025: Deadline for Defendants' response of no more than 8,400 words;

(c) November 10, 2025 at 12:00 p.m.: Deadline for Plaintiff's reply of no more than 4,200 words.

Dated this 29th day of October, 2025.

*Lauren King*

Lauren King
United States District Judge

ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER - 18